# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-20332-TORRES

SCOTT LEE SUGARMAN,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social
Security Administration,

    Defendant.
_____/

# ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the Parties' Cross Motions for Summary Judgment. Plaintiff SCOTT SUGARMAN ("Plaintiff" or "Sugarman) filed his Motion on June 24, 2017 [D.E. 25]; Defendant NANCY A. BERRYHILL, Commissioner of Social Security ("Defendant" or "Commissioner") filed her Motion on August 23, 2017 [D.E. 29] and Responded in Opposition to Plaintiff that same day. [D.E. 30].[1] The issues before this Court are whether the record contains substantial evidence to support the denial of benefits to Plaintiff and whether the ALJ applied the proper legal standards. Upon a review of the filings, the record in this case and the relevant authorities, we hereby find that Defendant's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion be **DENIED**, and **the** administrative decision below

---

[1] The Parties filed their consent to the undersigned Magistrate's jurisdiction in this matter on January 19, 2017. [D.E. 20].

be **AFFIRMED**.

## I. BACKGROUND

On January 27, 2011, Plaintiff applied for Social Security benefits, alleging a disability onset date of January 3, 2011. The Social Security Administration denied the application on May 11, 2011. [D.E. 19, p. 149]. He sought reconsideration of that decision on June 22, 2011, which was once again denied on September 6, 2011. *Id.*, p. 168. After requesting a hearing before an administrative law judge ("ALJ") following this second denial, Plaintiff appeared before ALJ M. Hart on November 7, 2012. Also present at the hearing were Plaintiff's counsel and vocational expert Ted Mitchell.

Plaintiff was 44 years old at the time the hearing took place. *Id.*, p. 35. He attended school until the seventh grade but never obtained a GED. When asked to describe his condition and symptoms, Sugarman claimed that he has difficulty performing regular, day-to-day functions because he becomes dizzy, fatigued and confused. *Id.*, p. 53. He also described feelings of paranoia, memory loss, anxiety and sensitivity to sounds and light that he battles on a daily basis. *Id.*, p. 53, 55. Plaintiff also discussed ongoing problems related to carpal tunnel syndrome and tinnitus, which requires treatment with a speech and hearing specialist. *Id.*, p. 60-61

In terms of prior job history, Sugarman worked as a pool cleaner, groundskeeper, maintenance worker, and parking lot attendant prior to the initiation of his disability claim. *Id.*, pp. 48-51. He testified that he had not worked since January 2011 and that he experiences his symptoms when he sits and stands during working hours. *Id.*, p. 52. Plaintiff told the ALJ that he believes his conditions stem

from Lyme disease. *Id.*

Plaintiff also testified as to the limitations that allegedly arise from his claimed mental and physical conditions, testifying that he has issues bending over and lifting things off the ground. *Id.*, p. 69. He stated he could not lift any weight with regularity, and that he often need to lay on his back throughout the day to relax and correct his equilibrium. *Id.*, p. 71. Sugarman indicated that his dizziness prevents him from standing for longer than 10 minutes at a time, and that he cannot walk more than five minutes before becoming exhausted. *Id.*, p. 72. He does not use a cane or other walking device to assist himself throughout the day. *Id.*

At home, Plaintiff stated that he tries to rest most of the day due to his conditions. *Id.*, p. 75. He lives with his significant other, who assists him throughout the house and helps him tie his shoes, buy groceries, and clean laundry. *Id.*, pp. 79-81. He admitted he is able to help with certain chores around the house, and tries to help his significant other clean dishes and load laundry. *Id.* He also claims that he has difficulty being amongst large groups of people, as the noises aggravate his hearing issues. *Id.*, p. 73.

The ALJ examined the vocational expert ("VE") after Plaintiff testified.[2] The ALJ presented the VE with a hypothetical, asking if a claimant with the same age, education, and work experience as Plaintiff could return to his past relevant work if such work was "limited to simple, routine, and repetitive tasks performed in a work

---

[2] Plaintiff's counsel did not object to Mr. Mitchell serving as a vocational expert.

environment free of fast-paced production requirements involving only simple work-related decisions and routine work place changes." *Id.*, p. 103. The VE answered in the negative. *Id.*, p. 104. The VE further explained, however, that there were jobs in the national economy that a hypothetical individual with the same limitations as Plaintiff could perform: marker, order caller, and cleaner/housekeeper. *Id*. The VE provided additional details, stating that each position was considered a "light" exertion position as defined by the Social Security regulations, *see* 20 C.F.R. § 404.1567, and required a Specific Vocational Preparation ("SVP") level of 2.

On December 31, 2012, the ALJ denied Plaintiff's claim for benefits and found that he was not disabled within the meaning of the Social Security Act. [D.E. 19, pp. 25-37]. In denying these claims, the ALJ applied the sequential evaluation process used in evaluating such claims. *See* 20 C.F.R. § 404.1520; 416.920. This process requires the ALJ to consider, in sequence, whether a claimant: (1) is working; (2) has one or more severe impairments, as defined in the regulations; (3) has one or more impairments that meet or medically equals an impairment listed in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listed impairments"); (4) can return to her past relevant work; and (5) if not, whether she can perform other work that exists in the national economy.[3]

---

[3] If the claimant establishes that an impairment prevents him from performing past work, the burden shifts to the Commissioner at step five to show that other jobs in the national economy exist which, given the claimant's limitations as a result of the impairment, he can still perform despite the conditions. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must rebut the finding and show that he cannot perform the work suggested by the Commissioner. *Hale v.*

4

The ALJ first found that Plaintiff had not engaged in substantial gainful activity since the date he claims he became disabled. The ALJ proceeded to the second step and determined that Sugarman had the following severe impairments: "history of borderline intellectual functioning (BIF), rule out psychotic disorder, mood disorder, tinnitus with mild mixed hearing loss and Eustachian tube dysfunction, possible Lyme disease, history of depression, arthralgia, left wrist carpal tunnel syndrome, and history of anxiety with panic attacks." [D.E. 19, p. 27].

At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal the severity of any of the listed impairments defined by Social Security regulations. Moving to step four, the ALJ considered the entire record and assessed Sugarman's residual functional capacity, finding Plaintiff able to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," with certain limitations. *Id*. Those limitations included Plaintiff avoiding concentrated exposure to moving machinery and exposure to unprotected heights and moderate noise. The ALJ also determined that Plaintiff was limited to "simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements." *Id*. Finally, Plaintiff should be limited "to only occasional interaction with the public." *Id*. As a result of these limitations, the ALJ determined that the claimant could not perform any of his past relevant work.

At step five, and based on testimony by the vocational expert, the ALJ found that despite the severe impairments alleged by Plaintiff, he still maintained the

---

*Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

residual functional capacity to perform other work as it existed in the national economy. [D.E. 19, p. 36]. Specifically, the ALJ found that Plaintiff could work as a marker, order caller, and housekeeper/cleaner, all of which are light duty, unskilled positions requiring a Specific Vocational Preparation ("SVP") level of "2." In comparing Sugarman's residual functional capacity with the physical and mental demands of his past relevant work, the ALJ determined that Plaintiff could perform these jobs and that significant numbers existed in the national economy. Accordingly, the ALJ found that Sugarman "has not been under a disability" as defined under the Social Security Act and denied his claim. *Id.*, pp. 36-37.

Sugarman appealed the ALJ's decision, which was denied on November 25, 2014. He then timely sought review of the ALJ's decision with this Court.

## II.  *STANDARD OF REVIEW*

The fundamental determination to be made in these cases is whether the Plaintiff is, in fact, disabled. A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the claimant is not only unable to perform previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work" that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. *Moore v.*

6

*Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Judicial review of an ALJ's final decision is limited to a determination as to whether there is substantial evidence in the record as a whole to support ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In determining whether substantial evidence supports the ALJ's decision, a reviewing court should not re-weigh the evidence or decide the facts anew. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Instead, so long as the ALJ's findings are supported by substantial evidence, they are deemed conclusive and we must defer to those findings even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400. However, no presumption of validity attaches to the ALJ's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

7

### III. ANALYSIS

As grounds for remand, the Plaintiff makes two arguments. First, he claims that the ALJ improperly relied on Plaintiff's non-compliance with treatment in making his credibility determination, which required investigation into the circumstances surrounding such non-compliance. Second, Sugarman asserts that the ALJ violated Social Security Rule 00-4P ("SSR 00-4P") when he failed to reconcile an alleged inconsistency between the vocational expert's testimony and Dictionary of Occupational Titles ("DOT"). We address each argument in turn.

#### A. *Substantial Evidence Supports the ALJ's Credibility Determination With Regard to Plaintiff's Non-Compliance with Treatment*

In order to demonstrate disability based on testimony concerning subjective pain, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise" to the claimed symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Powell v. Comm'r of Soc. Sec.*, 571 F. App'x 914, 916 (11th Cir. 2014). Under Social Security regulations, the ALJ must follow a two-step analytical model when considering such complaints: first, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to cause the claimant's pain or other symptoms; and second, once a claimant has established that the impairment could reasonably produce his symptoms, the ALJ evaluates the intensity and persistence of

the symptoms and their effect on the claimant's work. 20 C.F.R. § 416.929(a), (c); *Powell*, 571 F. App'x at 916.

Here, the ALJ applied the correct legal standards. In making his finding that Plaintiff possessed the residual functional capacity to perform light work, he correctly applied the two-step process: first, he provided a detailed analysis of the record medical evidence and determined that Plaintiff's claimed impairments "could reasonably be expected to cause the alleged symptoms." [D.E. 19, p. 31]. However, he found that Plaintiff's statements about the intensity, persistence and limiting effects of those symptoms were not entirely credible, before providing detailed analysis as to why this was the case. *Id*.

Further, the substantial evidence supported this determination. The ALJ discussed countless treatment records that indicated satisfactory management of the conditions Plaintiff claimed resulted in his alleged disability, including those dealing with his mental and physical health. The ALJ took particular note of the fact that certain medical records, dated after the onset of Plaintiff's claimed disability, indicated that Mr. Sugarman "was trying to work three jobs," including maintenance work and employment as a parking lot attendant. According to the ALJ, "[s]uch work activity at multiple jobs would suggest an ability to perform at least light exertional work." [D.E. 19, p. 32]. Another factor supporting the ALJ's determination involved certain "compliance problems" Plaintiff encountered with regard to the taking of prescribed medications. The ALJ supported this assertion by citing to each medical record that discussed these compliance issues, finding that although "[the

9

compliance] factors are not dispositive," they would nevertheless serve as "negative factors in evaluating the credibility of the claimant's allegations that his impairments preclude him from working in any capacity." [D.E. 19, p. 33]; *see also Dawkins v. Bowen*, 848 F.3d 1211, 1213 (11th Cir. 1988) ("[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability.").

Plaintiff now argues that the ALJ committed error because he failed to adequately investigate the reasons for Plaintiff's non-compliance. [D.E. 25, p. 5]. Plaintiff's first argument involves an alleged inability to pay for the medications he was prescribed by doctors during the course of his alleged disability. *Id.*, p. 6. Because "poverty excuses noncompliance," *Dawkins*, 848 F.2d at 1213, Plaintiff argues that the ALJ committed error when he failed to determine whether the alleged non-compliance took place because Plaintiff did not have the means to afford his prescribed medication.

Plaintiff primarily relies on *Dawkins* to support this argument, but it is distinguishable. In *Dawkins*, the claimant testified at the administrative hearing that she was unable to take her prescribed medication because she could not always afford to refill her prescription. *Id.* at 1213. In denying benefits, the ALJ relied "primarily if not exclusively" on evidence pertaining to the claimant's noncompliance with the prescribed medical treatment. *Id.* at 1212. On appeal, the Eleventh Circuit reversed and remanded the case, concluding that because the ALJ's finding that claimant was not disabled was "inextricably tied to the finding of noncompliance," the ALJ erred by failing to consider the claimant's ability to afford the prescribed medical

10

treatment. *Id*. at 1214.

Here, and unlike *Dawkins*, the ALJ's determination that Plaintiff did not suffer from a disability was not "inextricably tied to the finding of noncompliance." Indeed, it was but one of *several* factors that impacted the ALJ's determination. A cursory review of the decision demonstrates that the ALJ based his denial primarily on (1) Plaintiff's report to his doctors that he had worked three separate jobs during the time he claimed he suffered from a disability, and (2) a review of the medical evidence, which contained no indication by any treating physician that Sugarman was unable to work as a result of his claimed medical conditions. Because the ALJ's decision to deny disability rested primarily on several other grounds, Plaintiff's reliance on *Dawkins* is misplaced, and the ALJ's failure to consider Sugarman's finances did not constitute reversible error. *See Ellison*, 355 F.3d at 1275 (ALJ did not have to consider evidence regarding Social Security claimant's ability to afford his seizure medication because claimant's alleged failure to take his seizure medication was but one consideration in denying the disability claim); *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) ("Nevertheless, if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error."); *see also Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) ("In sum, the ALJ specifically articulated at least three reasons for rejecting appellant's subjective complaints of pain. Her argument that he improperly discredited her testimony on this point is accordingly without merit.").

Plaintiff also attempts to tie his non-compliance to "the effects of [his] psychological impairments and borderline intellectual functioning." [D.E. 25, p. 5]. In support of this argument, he cites to the Eleventh Circuit's decision in *Lucas v. Sullivan*, 918 F.3d 1567 (11th Cir. 1990). But once again, such reliance is misplaced. *Lucas* stands for a very simple proposition: a claimant's failure to adhere to prescribed medical treatment cannot be grounds for denial of social security benefits "when the reason for such failure is beyond the claimant's control." *Id.* at 1574 (citing *Dawkins,* 848 F.2d at 1213–14) (non-compliance does not prevent claimant from receiving benefits where non-compliance is result of inability to afford treatment); *McCall v. Bowen,* 846 F.2d 1317, 1319 (11th Cir. 1988) (absent evidence that claimant's weight was within her control, claimant's failure to lose weight upon physician's recommendation did not preclude claimant from receiving disability benefits)). Plaintiff's contention would be correct if, in fact, he demonstrated that some condition beyond his control caused his compliance issues, but he makes no such demonstration here; Sugarman does not cite to a single piece of record evidence that would support his argument that his intellectual capacity or mental condition somehow prevented him from complying with his doctor's orders.

The evidence in the record also flatly contradicts Plaintiff's claim. The medical records reviewed by the ALJ contain numerous references to Sugarman's compliance with his doctor's treatment recommendations, including those having to do with the taking of certain medications. It is therefore nonsensical for Plaintiff to claim that his intellectual capacity prevented him from taking medications in the face of valid

record evidence showing that this was not an issue at various points during the course of his alleged disability.

Accordingly, we find Plaintiff's contentions regarding the ALJ's findings are without merit and that the substantial evidence supports the ALJ's credibility determination.

### B. *Social Security Ruling 00-4P Does Not Control, and Does Not Support Remand*

Plaintiff also argues that his case should be remanded because the ALJ failed to resolve a conflict between the VE's hearing testimony and the DOT. Specifically, Sugarman claims that the ALJ found that he should be limited to simple, routine work-related tasks, but that the positions that the VE determined he could still work – marker, order caller, or housekeeper – all exceed the reasoning level limitations described in the ALJ's decision. [D.E. 25, p. 7-9]. According to Plaintiff, because the ALJ failed to adhere to SSR 00-4P and resolve the alleged conflict between the VE's testimony and the DOT, the matter must be remanded for such resolution. *Id*.

In pertinent part, SSR 00-4P reads:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and

provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4P. Plaintiff argues that each job identified by the VE requires a Reasoning Development Level of 2, which means Sugarman must be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DICTIONARY OF OCCUPATIONAL TITLES, § 209.587-034, 1991 WL 671802 (marker); § 209.667-014, 1991 WL 671807 (order caller); § 323.687-014, 1991 WL 672783 (cleaner, housekeeping). Because the ALJ found that he should be limited to simple, routine tasks, Plaintiff argues that he is unable to perform the reasoning requirements attached to each position.

This argument fails for three reasons. First, numerous courts have held that any claimant limited to simple, routine, repetitive tasks by an ALJ or VE can perform tasks and occupations associated with level two reasoning as defined by the DOT. *See generally Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660 (11th Cir. 2007) (no remand where VE identified reasoning level three jobs for a plaintiff who could only perform simple, routine, and repetitive work); *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016) ("As for jobs labeled with reasoning levels of two or three, they may also be jobs with simple tasks."); *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009) (level three reasoning not inconsistent with plaintiff's ability to perform only simple work); *Renfrow v. Astrue*, 496 F.3d 918 (8th Cir. 2007) (reasoning level three not inconsistent with plaintiff's inability to do complex work); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (stating that "level-two reasoning appears more

consistent with Plaintiff's RFC" of "simple and routine work tasks"); *Lara v. Astrue*, 305 F. App'x 324 (9th Cir. 2008) (plaintiff who is able to perform simple repetitive tasks capable of doing work at reasoning level two); *Money v. Barnhart*, 91 F. App'x 210 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive."); *Hurtado v. Astrue*, 2010 WL 1850261, at *1 (S.D. Fla. Apr. 14, 2010) ("Most courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks."); *Menendez v. Colvin*, 2015 WL 1311460, at *4-5 (S.D. Fla. Mar. 23, 2015) (collecting other cases). These cases demonstrate that Plaintiff's argument is based on the flawed assumption that an underlying conflict between the VE's testimony and the DOT actually exists; each of these cases reflect that this is decidedly not true. *See Menendez*, 2015 WL 1311460 at *6 ("Since no apparent conflict was raised at the hearing between the expert's testimony and the DOT, the ALJ was not required to address SSR 00-4p). For this reason, we find that no underlying conflict exists here, which is sufficient to deny the request for remand from the outset.

Second, even assuming that Plaintiff could convince us that there actually was a conflict, the law of this Circuit establishes that the ALJ did not err when he relied on the VE's testimony in the face of conflicting DOT evidence. In a case involving similar allegations, whereby a claimant challenged an ALJ's denial based on identical arguments raised by Plaintiff here, the Eleventh Circuit held that the testimony of a VE "trumps" the definitions contained in the DOT if the two sources provide

conflicting evidence:

> The ALJ determined that Jones was not capable of performing a full range of sedentary work, so he appropriately called a VE to testify whether Jones, given her limitations, was capable of performing other jobs in the national economy. The VE identified the above-mentioned jobs that Jones could perform with her limitations. Notwithstanding, Jones argues that the ALJ's reliance on the VE's testimony was improper because the exertional and environmental requirements of some of the jobs identified by the VE, such as hand packager and nut sorter, conflict with the DOT.
>
> …
>
> We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony "trumps" the DOT. We so hold because the DOT is not the sole source of admissible information concerning jobs. The DOT itself states that it is not comprehensive. It provides occupational information on jobs in the national economy, and it instructs DOT users demanding specific job requirements to supplement the data with local information detailing jobs within their community. Additionally, the Code of Federal Regulations states that the SSA will take administrative notice of reliable job information available from various governmental and other publications, such as the DOT. By this wording, the SSA itself does not consider the DOT dispositive.

*Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (citations and quotations omitted). Despite the fact that Social Security Administration promulgated Rule 00-4P after *Jones*, the Eleventh Circuit continues to apply the directive set forth in that decision. *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (discussing SSR 00-4p to hold "[e]ven assuming that there was an inconsistency between the VE's opinion and the DOT, the ALJ did not err in relying on the VE's opinion to determine that Leigh was not disabled."); *Miller*, 246 F. App'x at 662 (applying *Jones* and finding that "[o]ur precedent establishes that the testimony of a vocational expert 'trumps' an inconsistent provision of the DOT in this Circuit."). The

guidance provided by this Circuit states that the ALJ must give precedence to the VE's testimony, even in the face of a conflict between the two sources. He did so here.

Third, and once again assuming that Plaintiff's theory about the alleged conflict had merit, the ALJ complied with SSR 00-4P by asking whether the VE's testimony was consistent with the DOT. [D.E. 19, p. 107]; SSR 00-4P ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). Here, the ALJ asked if the VE's testimony was consistent with the DOT, which the VE answered in the affirmative. Sugarman, present at this hearing and represented by counsel, did not raise any inconsistency after the VE gave this testimony, and did not seek further clarification on whether such a conflict actually existed. Thus, the ALJ properly relied on the vocational expert's testimony concerning the alleged conflict, and such reliance is supported by the substantial evidence. *See Chambers*, 662 F. App'x at 873 (argument that the ALJ should have questioned the vocational expert about any inconsistency with the DOT failed because "there was no apparent inconsistency—indeed, Chambers did not question the vocational expert about any inconsistency or raise the issue before the ALJ, and the vocational expert affirmed that his testimony was consistent with the DOT."); *Brijbag v. Astrue*, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008) ("[T]he ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no such apparent conflict exists with the DOT.").

## IV.  CONCLUSION

In sum, we must ultimately determine whether the ALJ's decision can be supported by substantial evidence, and whether he applied the correct legal standards. 42 U.S.C. § 405(g); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996). We answer both questions in the affirmative, and therefore **ORDER** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Cross Motion for Summary Judgment be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of October, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge